# COMPLAINT

## Docket No. _____

## U.S. DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

NICHOLAS WEIR

Plaintiff,


v.


MONTEFIORE MEDICAL CENTER, ALBERT EINSTEIN COLLEGE OF

MEDICINE, EVRIPIDIS GAVATHIOTIS, ANNA GARTNER, LITTLER

MENDELSON, JEAN L. SCHMIDT, and EMILY C. HAIGH

Defendants.

## Table of Contents

Page(s)

FACTUAL ALLEGATIONS AND CAUSES OF ACTION……………………………7-52

I.    SHORTENED LITIGATION HISTORY……………………………………..……7-10

II.    HALLMARKS IN THE DISCOVERY PROCESS (Index No. 42000/2020E).........10-35

A.  Plaintiff's First Set of Requests for Discoverable Information

(July 7, 2020: Doc. 67)...........................................................................................10-12

B.  Plaintiff's Second Set of Requests for Discoverable Information

(August 16, 2020: Doc. 68)....................................................................................12-15

C.  Plaintiff's First Set of Interrogatories for Discoverable Information

(September 8, 2020: Doc. 64)......................................................................................15

D.  Plaintiff's files MOTION #003 to Compel Discovery and to Sanction

(September 12, 2020: Doc. No.61)........................................................................15-16

E.  Defendants file Opposition to Plaintiff's Motion to Compel Discovery

and to Sanction and made a Proposed Discovery Schedule

(September 17, 2020: Doc. No. 62-65)..................................................................16-17

F.   Plaintiff files Opposition to Defendants' Proposed Discovery Schedule and

Reply to Defendants' Opposition of Motion to Compel Discovery and to

Sanction and a (September 20, 2020: Doc. No. 66-71)................................................17

G.  Defendants' attorneys file MOTION #004 for an Extension of Time to Respond

to Plaintiff's 55 interrogatories (September 28, 2020: Doc. No. 72-74)..................17-19

H.  Plaintiff files Cross-Motion for an Extension of Time to Reply and For

Miscellaneous Relief (September 30, 2020: Doc. No. 75-76)....................................19-20

I.   Plaintiff's Letter to Judge About Continued Opposition to Disclose

     Basic Discoverable Information (November 4, 2020: Doc. No. 77-78).....................20-22

J.   Plaintiff files MOTION #005 for an Order to Show Cause with a T.R.O.

     against Defendants (December 14, 2020 filed; December 22, 2020

     signed: Doc. No. 79 and 87)......................................................................................22-23

K.  Motion Hearing (to Compel and to Sanction) via video-conference

     (January 20, 2021)......................................................................................................23-24

L.   Plaintiff files Objection to Court's Order dated 1.28.2021 and a

     Proposed Order (February 16, 2021: Doc. No. 92-95.....................................................24

M. Plaintiff files MOTION #006 for Reconsideration, Extension of Time,

     Recusal, and for Miscellaneous Relief (February 24, 2020: Doc. No.96-101)...............24

N.  ORDER-MOTION (dated 1.28.2021; filed March 12, 2021:

     Doc. No.102 (MOTION #003) and Doc. No.103 (MOTION #004))..........................24-25

O.  ORDER-OTHER (dated 4.20.2021; filed April 22, 2021: Doc. No. 104)……...........25

P.   ORDER-OSC (dated 4.23.2021; filed April 27, 2021:

     Doc. No.105 (MOTION #005))........................................................................................25

Q.  ORDER-MOTION (dated 4.23.2021; filed April 27, 2021:

     Doc. No.106 (MOTION #006))........................................................................................25

R.  Plaintiff files Emergency OSC with a Stay (MOTION #007)

     for recusal of Judge Julia Rodriquez, to sanction Defendant's

     attorneys, and to compel discovery (filed June 7, 2021: Doc. No. 107-111)….............25-26

S.   DISCOVERY CONFERENCE ORDER

     (dated 6.10.2021; filed June 29, 2021: Doc. No. 114).....................................................26

T.  ORDER-OSC (dated 6.10.2021; filed June 29, 2021:

   Doc. No.115 (MOTION #007))....................................................................................26

U.  Defendants file MOTION #008 for Extension of Time for the Deposition of

   Dr. Gavathiotis (filed June 29, 2021: Doc. No.112-113)...........................................26-27

V.  Plaintiff's Third Request for Discoverable Information (June 29, 2021)…………27-28

W. Plaintiff files Affidavit in Opposition to MOTION #008

   (dated July 7, 2021; filed July 8, 2021: Doc. No. 116-118).......................................28

X.  Plaintiff files a Subpoena ad testificandum for witness Dr. Evripidis

   Gavathiotis (filed July 12, 2021: Doc. No. 119-121)...................................................28

Y.  Motion Hearing (to extend time) via video-conference

   (July 14, 2021) and ORDER-MOTION (dated 7.26.2021;

   filed July 28, 2021: Doc. No.122 (MOTION #008))...................................................29-30

Z.  Defendants' attorneys explicitly refused to produce Discoverable

   Information (July 20, 2021: Doc. 161)…………………………………………..30

AA.      Plaintiff files MOTION #009 for Extension of Time to

   submit Errata Sheet (filed 9.2.2021 and

   amended on 9.10.2021: Doc. No. 123-129 and Doc. No. 150-151).........................30-31

BB.      Defendants file MOTION #010 for Summary Judgment using the

   uncorrected transcript (filed September 9, 2021: Doc. No. 130-149).......................31-32

CC.      Defendants file a Stipulation signed by the parties to adjourn the motion

   for Summary Judgment (dated 4.20.2021; filed April 22, 2021: Doc. No. 153)..........32

DD.      Plaintiff files Cross-Motions

   (dated 9.30.2021; filed 10.1.2021: Doc. No.154-164)..................................................32

EE. Defendants file Reply in Support of Motion for Summary Judgment

(filed 10.5.2021: Doc. No.165-168)..................................................................32

FF. Plaintiff files Reply in Support of Cross-Motions

(filed 10.6.2021: Doc. No.169-171)............................................................32-33

GG.        MEMORANDUM DECISION/ORDER

(dated 11.5.2021; filed 11.17.2021: Doc. No.172 (MOTION #010))........................33-34

HH.        Plaintiff files Notice of Appeal (filed 11.18.2021: Doc. No.173)....................35

III.   PRE- AND POST-DISCOVERY HALLMARKS…………………………….....35-38

IV.   LIST OF CAUSES OF ACTION IN THIS CASE…………………………….....38-52

1.   COUNT I: Backward-looking Right of Access Claim under the 1st, 5th, and 14th

Amendments and the Privileges and Immunities Clause of Article IV……………41-48

A.  NYCHRL and NYSHRL Retaliation Claims………..……………….....41-42

B.  NYCHRL and NYSHRL Equal Pay Claim………………………….....43-44

C.  NYCHRL and NYSHRL Discrimination Claims………………………44-46

D.  NYCHRL and NYSHRL Hostile Work Environment Claims…………..46-47

E.  Aiding-and-Abetting Claims under NYCHRL and NYSHRL……………48

2.   COUNT II: Procedural Due Process under the 5th and 14th Amendments,

and Article I, § 6 of NY Constitution…………………………………………48-49

3.   COUNT III: Equal Protection under the 14th Amendment, and

Article I, § 6 of NY Constitution…………………………………………..……...49

4.   COUNT IV: Conspiracy Claim under section 1985(3)…………………………..49-50

5.   COUNT V: Seventh Amendment Rights and

Rights under Article I, § 2 of NY Constitution……………………………...…50

6.   COUNT VI: Judiciary Law § 487…….....…………………………………….……50-51

7.   COUNT VII: Legal Fraud…………………………………………....………51-52

8.   COUNT VIII: Aiding and Abetting Fraud………………………………….………52

9.   COUNT IX: Aiding and Abetting the Commission of Tort…………………………...52

PRAYER FOR RELIEF……………………………………………………...…………52-54

A.  DAMAGES AND OTHER RELIEFS……………………………...........................53-54

VERIFICATION…………………………………….…………………………...............55

FACTUAL ALLEGATIONS AND CAUSES OF ACTION

I.      SHORTENED LITIGATION HISTORY

1.  On December 20, 2016, Plaintiff commenced an Employment Discrimination action against
    Montefiore Medical Center and Albert Einstein College of Medicine. See Weir v. Montefiore
    Medical Center et al. No. 1:16-CV-09846-KPF, ECF No. 2 (S.D.N.Y. Dec. 16, 2016).

2.  On May 4, 2017, the Hon. Judge Katherine Polk Failla held a pre-motion conference for
    Defendants' April 20, 2017 request for leave to file a motion to dismiss. See Transcript at Id.
    ECF No. 21. While Plaintiff testified that discrimination was only a fraction of the overall
    reasons for the termination. Plaintiff testified that his boss was bribed as part of an ongoing
    conspiracy to coerce him into joining the military. During the conference hearing, Judge
    Failla noted that a complaint involving bribery is not before her and that Plaintiff should
    focus on the discriminatory actions of the termination. Judge Failla also suggested that
    Plaintiff seek legal assistance from a legal aid organization located in the building of the
    Courthouse. The Court granted Plaintiff leave to amend his complaint.

3.  On July 6, 2017, Plaintiff filed his Amended Complaint and subsequently the parties filed
    their papers in support or opposition to dismissal of the Amended Complaint. See Amended
    Complaint at Id. ECF No. 20 and motion papers at Id. ECF No. 23-33.

4.  On February 22, 2018, the Court granted Defendants' motion to dismiss the Amended
    Complaint, denied further leave to amend, and pointed out Plaintiff's poor ability to speak
    law because he was unable to focus on the discriminatory aspects of the termination. The
    Court misread or misinterpreted several facts from the Amended Complaint such as the

timeline when he engaged in protected activity in state Court against New York State and CUNY.

5. On August 28, 2018, Plaintiff moved the Court for relief from its February 22, 2018 judgment under Rule 60(b). One of Defendants' attorneys misled the Court that the motion for rule 60(b) relief was untimely when it was not. See Weir v. Montefiore Medical Center et al. No. 1:16-CV-09846-KPF, ECF No. 49 and 51.

6. On January 24, 2019, the Second Circuit declined to do an analytical review of Plaintiff's appeal. See Case 18-813, ECF No. 94. On October 7, 2019, the U.S. Supreme Court denied Plaintiff's petition for a writ of certiorari that was filed on April 26, 2019. See Case No. 18-9007.

7. On April 24, 2019, Plaintiff commenced action in the Supreme Court of the State of New York, Queens County, for the state claims which Judge Failla declined to exercise jurisdiction over. See Weir v. Montefiore Medical Center et al. Index No. 707416/2019, NYSCEF Doc. No. 1. On June 28, 2019, Plaintiff filed an Amended Complaint. Id. NYSCEF Doc. No. 2 and see also Doc. No. 7 which is notarized. On July 26, 2019, Defendants filed a notice of motion for change of venue to Bronx County and the Court granted the motion on December 17, 2019. See Id. NYSCEF Doc. No. 4 and 16, respectively.

8. On November 17, 2021, the New York Supreme Court, Bronx County Judge, Ruben Franco, granted Defendants' summary judgment motion and shortly thereafter resigned/retired. See Weir v. Montefiore Medical Center et al. Index No. 42000/2020E, NYSCEF Doc. No. 172. The bulk of this new case occurred before this District Court (S.D.N.Y.) stems from acts that took place in New York Supreme Court prior to the granting of the summary judgment

motion and these acts will be outlined in subsequent sections herein: "HALLMARKS IN THE DISCOVERY PROCESS (Index No. 42000/2020E)"

9. On May 13, 2022, Plaintiff perfected his appeal in the Appellate Division, First Department. See Weir v. Montefiore Medical Center et al. Index No. 2021-04330, NYSCEF Doc. No. 4-7. On August 10, 2022, Defendants filed their opposition brief in the Appellate Division, First Department. See Id. NYSCEF Doc. No. 9-10.

10. On August 19, 2022, Plaintiff filed his reply brief in the Appellate Division, First Department. See Id. NYSCEF Doc. No. 11

11. On September 27, 2022, the Appellate Division issued an order affirming the trial court's granting of Defendants' summary judgment. See Id. NYSCEF Doc. No. 13

12. On October 27, 2022, Plaintiff filed a motion to reconsider in the Appellate Division, First Department. See Id. NYSCEF Doc. No. 14

13. On December 22, 2022, the Appellate Division issued an order without an opinion denying Plaintiff's motion. See Id. NYSCEF Doc. No. 15

14. On December 26, 2022, Plaintiff filed a motion for leave to appeal in the Court of Appeals and subsequently amended his motion to include the motion to reconsider filed in the Appellate Division.

15. On January 10, 2023, Plaintiff filed a motion to reopen the federal case. See Weir v. Montefiore Medical Center et al. No. 1:16-CV-09846-KPF, ECF No. 53.

16. On February 2, 2023, Judge Failla denied the motion noting in-part that "the great weight of Plaintiff's Rule 60(b) motion is concerned with Plaintiff's state court proceedings…. these proceedings are simply beyond the purview of this Court." See Id. ECF No. 54.

17. On February 6, 2023, Plaintiff filed a Letter Response to Order and the Court responded to the Letter noting that it will not reopen the case or endorse another letter regarding the February 2, 2023 Order. See Id. ECF No. 55 and 56, respectively.

18. On April 25, 2023, the Court of Appeals denied the motion without an opinion but with only the following statement: "Motion for leave to appeal denied. Judge Halligan took no part.". See Weir v. Montefiore Medical Center et al. DecisionList042523, Mo. No. 2023-52, page 9.

II.     HALLMARKS IN THE DISCOVERY PROCESS (Index No. 42000/2020E)

A. Plaintiff's First Set of Requests for Discoverable Information (July 7, 2020: Doc. 67):

19. On July 7, 2020 (received July 9, 2020), Plaintiff made his First Set of Request for Discoverable Information. See NYSCEF Doc. No. 67. Defendants "responded" on July 31, 2020 and submitted their discovery demands.

20. "The Defendants' attorneys were supposed to respond prior to July 31, 2020…July 29, 2020 would have been twenty days after receipt of the discovery requests on July 9, 2020 and their response was late. The Plaintiff did not state a due date on one of the notices for discovery request (hence, the default twenty days) and stated "prior to July 31, 2020" as the due date on another notice of discovery request." NYSCEF Doc. No. 101 ¶ 47.

21. "The Defendants' attorneys failed to provide all the witnesses' names including lab members in their late response. Hence, there is still outstanding discoverable information under the Demand for Names of Witnesses received on July 9, 2020." Id. NYSCEF Doc. No. 101 ¶ 48.

22. On August 3, 2020, Plaintiff acknowledged receipt of Defendants' responses and defendants' demands on August 3, 2020 and noted that "not one single discovery document was provided

besides already known information: some witness names were provided but not even their contact information." (Doc. No. 69).

23. On August 4, 2020, Defendants' attorneys, Jean L. Schmidt and Emily C. Haigh, noted that "[a]lthough there were no responsive documents to your requests, we do plan to produce documents that are relevant to your lawsuit. We plan to do that this week via email and hard copy production. Lastly, you can reach all witnesses named by Defendants through us as counsel for Defendants." (see page 1 of 7 Doc. No. 69). Defendants' attorneys provided selective documents on August 12, 2020 (received August 13, 2020). Defendants agreed to allow Plaintiff until September 30, 2020 to respond to their discovery demands.

24. On August 11, 2020, Plaintiff noted:

> "I requested documents and the general feedback was that every document and statements are privileged or work-product. You subsequently stated that I would get documents last week. Now, you state that I will get documents with an open-ended timeline. I am trying really hard to be patient and respectful in spite of the actions of your co-counsel over the last 4 years in desperate attempts to dismiss my case. Please note that if documents and statements are unlawfully [withheld] or falsified, I will be forced to take additional actions. You have a team of lawyers, assistants, and other resources so you are more than capable of providing discovery statements and documents in a timely manner." (Doc. No. 69).

25. "The Defendants' attorneys provided selected documents including [the] party's own statements on August 12, 2020 (received August 13, 2020). The Defendants' attorneys were supposed to properly respond by August 2, 2020 (twenty-four days from July 9, 2020) and therefore provided the selected documents late. The Defendants' attorneys responded on July

31, 2020 with a lie ("no documents responsive to this Demand") and general objection. (see paragraph 44 herein). Furthermore, there [is] still outstanding discoverable information under the Notice to Produce Party Statements received on July 9, 2020." NYSCEF Doc. No. 101 ¶ 49.

26. "The Defendants' attorneys provided selected documents including witnesses' own statements on August 12, 2020 (received August 13, 2020). The Defendants' attorneys were supposed to properly respond by August 2, 2020 (twenty-four days from July 9, 2020) and therefore provided the selected documents late. The Defendants' attorneys responded on July 31, 2020 with a lie ("no documents responsive to this Demand") and general objection. (see paragraph 42 herein). Furthermore, there [is] still outstanding discoverable information under the Notice to Produce Witness Statements received on July 9, 2020." Id. NYSCEF Doc. No. 101 ¶ 50.

B. Plaintiff's Second Set of Requests for Discoverable Information (August 16, 2020: Doc. 68):

27. On August 16, 2020 (received on August 17, 2020), Plaintiff made a Second Set of Request for Discoverable Information which were similar to the first set of requests with some modifications and inclusion of a Notice to Admit. Defendants failed to provide the requested information including witnesses' name in their response on September 7, 2020.

28. "The Defendants' attorneys were supposed to respond on or before September 6, 2020 and therefore their response to Second Demand for Names of Witnesses was late." NYSCEF Doc. No. 101 ¶ 60.

29. "The Defendants' attorneys failed to provide all the witnesses' names including lab members in their late response. The Defendants' attorneys noted a lie that "[d]efendants object to providing the other information demanded by Plaintiff on grounds that it seeks disclosure of

information that is neither material, necessary or relevant to claims or defenses" (see paragraph 54 herein). The Defendants' attorneys also noted general objections. Hence, there [is] still outstanding discoverable information under the Second Demand for Names of Witnesses received on August 17, 2020." NYSCEF Doc. No. 101 ¶ 61.

30. "The Defendants' attorneys were supposed to respond on or before September 6, 2020 and therefore their response to Second Notice to Produce Party Statements was late." NYSCEF Doc. No. 101 ¶ 62.

31. "The Defendants' attorneys responded on September 7, 2020 with a lie ("there are no documents responsive to this Demand. To the extent that Plaintiff requests emails relevant to this action, see Defendants' document production D000001-95.") and general objection. (see paragraph 58 herein). Furthermore, there [is] still outstanding discoverable information under the Second Notice to Produce Party Statements received on August 17, 2020." NYSCEF Doc. No. 101 ¶ 63.

32. "The Defendants' attorneys were supposed to respond on or before September 6, 2020 and therefore their response to Second Notice to Produce Witness Statements was late." NYSCEF Doc. No. 101 ¶ 64.

33. "The Defendants' attorneys responded on September 7, 2020 with a lie ("there are no documents responsive to this Demand. To the extent that Plaintiff requests emails relevant to this action, see Defendants' document production D000001-95.") and general objection. (see paragraph 58 herein). Furthermore, there [is] still outstanding discoverable information under the Second Notice to Produce Witness Statements received on August 17, 2020." NYSCEF Doc. No. 101 ¶ 65.

34. "The Defendants' attorneys were supposed to respond on or before September 6, 2020 and therefore their response to Notice to Admit was late." NYSCEF Doc. No. 101 ¶ 66.

35. On September 7, 2020, Defendants' attorneys stated that they would seek a protective order against the Notice to Admit but abandoned that notion possibly after realizing that they failed to timely object. Defendants' attorneys presumed that the "Plaintiff agreed to withdraw his improper requests" (pages 3 and 4 of Doc. No. 62 and page 3 of Doc. No. 63). Plaintiff never withdrew his Notice to Admit. Defendants' attorneys responded late to the Notice to Admit on September 8, 2020 by only objecting to the Notice and not responding to any of the statements or questions (page 5 of 10 Doc. No. 63). Defendants' attorneys objected to the Notice to Admit based on the following reasons (1) "[t]hey are directed to non-party witnesses rather than Defendants;" (2) "[t]hey pertain to irrelevant facts;" (3) "[t]hey are vague and ambiguous; and" (4) "[t]he items you include in your Notice to Admit are better suited for deposition or questions in lieu of a deposition." Id. Defendants' attorneys asked Plaintiff to withdraw the Notice to Admit immediately after outlining their reasons for their objection. Id.

36. On September 7, 2020, Plaintiff noted "[i]t is clear that you and co-counsel intend on obstructing due process which has been ongoing for years. Again, you are intentionally withholding discoverable information that [is] necessary and material to this case. Please be advised that I find your continued obstruction of this court process disrespectful." (page 6 of Doc. No. 63). Defendants' attorneys responded on September 8, 2020 that "[w]e certainly are not withholding discoverable information." (page 5 of Doc. No. 63).

37. On September 9, 2020, Plaintiff noted that Defendants' attorneys "failed to provide additional information for the Second Request noting that you have no additional

information. I also requested the names of witnesses who were lab members or other
employees of Defendants. I got no response....[Defendants' attorneys] even note that
statements in the Notice to Admit were [in dispute] inferring that [Defendants' attorneys]
have obtained sworn or unsworn contradictory information." (page 1 of Doc. No. 63).

C. Plaintiff's First Set of Interrogatories for Discoverable Information (September 8, 2020: Doc.
64):

38. Plaintiff conveyed the First Set of Interrogatories to Defendants on September 8, 2020 which
largely included elements of the Notice to Admit requested on August 16, 2020. See
NYSCEF Doc. No. 64

39. "On September 8, 2020, Plaintiff requested the discovery of "Research Assistant or Research
Technician job applications from Nicholas Weir from September 2015 through to November
2015." (page 7 of Doc. No. 64). This request is similar to Plaintiff's Notice to Produce Party
Statements (received on July 9, 2020) and Plaintiff's Second Notice to Produce Party
Statements (received on August 17, 2020)." NYSCEF No. 101 ¶ 74.

D. Plaintiff's files MOTION #003 to Compel Discovery and to Sanction (September 12, 2020:
Doc. No. 61):

40. Plaintiff's courtesy to Defendants' attorneys' delinquencies was fully breached when
Defendant's attorney stated that they were not withholding any discoverable information on
September 8, 2020. This was an outright middle finger to Plaintiff and the Court. Keeping in
mind that this case originally commenced in December 2016 and this was not the first nor
second time Defendant's attorneys convey blatant lies.

41. On September 12, 2020, Plaintiff filed the motion to compel discovery and to sanction after
Defendants' attorneys failed to timely and appropriately respond as the law requires to

Plaintiff's First Set of Request made on July 9, 2020. Additionally, Defendants' attorneys still failed to appropriately respond as the law requires to Plaintiff's Second Set of Request made on August 16, 2020.

E. Defendants file Opposition to Plaintiff's Motion to Compel Discovery and to Sanction and made a Proposed Discovery Schedule (September 17, 2020: Doc. No. 62-65):

42. On September 17, 2020, Defendants opposed the Motion to Compel Discovery and to Sanction (Doc. No. 62). Defendants noted that "[o]n August 12, 2020, Defendants produced 95 pages of documents and explained that although no documents were responsive to Plaintiff's demands, Defendants voluntarily produced relevant documents in order to move the matter to its conclusion." In other words, Defendants did not and still do[] not intend on producing requested discoverable documents as required by law.

43. On September 17, 2020, Defendants' attorneys also proposed a Discovery Schedule where all additional discovery requests deadline should be made by October 2, 2020.

44. On September 17, 2020, Defendants' attorneys noted that since the "Plaintiff was employed for approximately three (3) months, it is clear Defendants are not withholding relevant documents." (page 4 of Doc. No. 62). Defendants' attorneys attempt to justify the reason for not providing the specific requested discoverable documents had to do with the limited duration of the job.

45. On September 17, 2020, Defendants' attorneys noted that "[t]here are no outstanding discovery requests and Defendants are not deficient in any way." (page 4 of Doc. No. 62). This is yet again another lie. Defendants' attorneys noted that "[i]n response to Plaintiff two separate demands for names of witnesses, Defendants responded with objections and provided the names of seven individuals who may have knowledge with regard to the

allegations in the Complaint and / or Defendants' Defenses." (page 5 of Doc. No. 62).

Defendants' attorneys did not provide the names of lab members until November 25, 2020

(see Doc. No. 99). Defendants' attorneys still have other requested witnesses' names

outstanding as well as other requested discoverable information submitted in the first Set of

Request and the second Set of Request.

F. Plaintiff files Opposition to Defendants' Proposed Discovery Schedule and Reply to

Defendants' Opposition of Motion to Compel Discovery and to Sanction (September 20, 2020:

Doc. No. 66-71):

46. On September 20, 2020, Plaintiff filed his Opposition to Defendants' Proposed Discovery

Schedule and Reply to Defendants' Opposition of Motion to Compel Discovery and to

Sanction. Plaintiff noted that

"[t]he discovery process cannot be concluded until both parties consent that all

requested discoverable information that is material and necessary has been

obtained. Premature conclusion of discovery is not justice nor due process, but

rather an utter contradiction of due process. The defendants' attorneys are setting

up a schedule that caters to their defense and not to allow for due process." (page

2 of Doc. 66).

G. Defendants' attorneys file MOTION #004 for an Extension of Time to Respond to Plaintiff's

55 interrogatories (September 28, 2020: Doc. No. 72-74):

47. On September 27, 2020, Plaintiff responded to Defendants' attorneys request for additional

time to respond to the interrogatories and discovery scheduling, but Plaintiff did not get any

feedback:

"Which specific question(s) of the request that you have not obtained response(s) for to date?

I do not consent because you have consistently and intentionally withheld discoverable information from my initial request on July 7, 2020 (July 9, 2020 received). Here, you make another attempt to intentionally delay handing over discoverable information in a timely manner. Furthermore, you had the audacity to end discovery by October 2, 2020. This is all a defense tactic and you continue to violate due process. Moreover, if you wanted to end discovery on October 2, 2020, this reasonably presumes you or co-counsel possess discoverable information given your short timeline. You continue to show that you and co-counsel will take any measure in defending the indefensible so the reasonable assumption is that you accept all the consequences of these actions. Again, this case commenced in 2016. If your clients did not violate all the laws in the Amended Complaint, you can easily forward all the discoverable information confirming this. Lastly, discovery will not end until all discoverable information is obtained so I will not agree to any schedule. If you were cooperative, setting up a schedule would be practical. However, you have demonstrated time and time again that you intend on defending the indefensible at any cost." (Doc. No. 74)

48. On September 28, 2020, Defendants' attorneys requested an extension of time (30 days: October 28, 2020) to respond to First Set of Interrogatories (conveyed on September 8, 2020 and largely included elements from the overdue Notice to Admit conveyed on August 16, 2020). Defendants' attorneys noted: "Defendants need additional time to respond to Plaintiff's interrogatories because of the number of interrogatories, i.e. 55, and the detailed

natured of the interrogatories, which are in effect written deposition questions." (Doc. No.

73).

H. Plaintiff files Cross-Motion for an Extension of Time to Reply and For Miscellaneous Relief

(September 30, 2020: Doc. No. 75-76):

49. On September 30, 2020, Plaintiff's Cross-Motion for an Extension of Time to Reply and For

Miscellaneous Relief.

> "[T]he Plaintiff cross moves the Court for miscellaneous relief to allow Plaintiff
>
> twenty days (20) upon receipt of the Defendants' full responses to all his
>
> discovery requests made since July 7, 2020 (received July 9, 2020).... The
>
> Defendants apparently believe that they can treat a Pro Se Litigant in any manner
>
> by undermining due process. The Defendants sought to abruptly and untimely end
>
> the discovery process (October 2, 2020 was the defendants' proposed deadline).
>
> The Defendants have repeatedly lied and declined to provide basic requested
>
> discoverable information. This is a Court proceeding and not a political or a
>
> hanky panky proceeding." (Doc. No. 75).

50. On October 28, 2020, the Defendants' attorneys responded: "Defendants hereby incorporate

by reference the General Objections as if fully set forth herein. Defendants further object to

this Interrogatory on the grounds: (i) by requesting other job application separate from the

application Plaintiff submitted that caused him to be hired, it improperly seeks the disclosure

of information that is neither material, necessary or relevant to the subject matter of this

action, (ii) it improperly assumes a fact which is not proven. Subject to and without waiving

any of the foregoing objections, Defendants respond as follows: See D000074-82, which

includes a document titled "Albert Einstein College of Medicine Inc. Online Job

Application" completed by Plaintiff and Plaintiff's resume. Defendants will supplement their response to this Interrogatory if and when additional information responsive to this Interrogatory is discovered." NYSCEF No. 101 ¶ 75.

51. On October 28, 2020, Defendants' attorneys responded to Plaintiff's First Set of Interrogatories (conveyed on September 8, 2020 and largely included elements from the overdue Notice to Admit conveyed on August 16, 2020). "For the third time, the Defendants' attorneys frivolously declined to provide names of witnesses as well as the addresses of all [witnesses] including all work and home addresses" after the requests received on July 9, 2020 and August 17, 2020. (see paragraph 71 and 73 herein)." NYSCEF No. 101 ¶ 79. This is further frustrated by the fact that Defendants' attorneys filed a Proposed Discovery Schedule where all additional discovery requests deadline should be made by October 2, 2020 (Doc. No. 62).

I. Plaintiff's Letter to Judge About Continued Opposition to Disclose Basic Discoverable Information (November 4, 2020: Doc. No. 77-78):

52. On October 28, 2020, Defendant responded to the First Set of Interrogatories. Yet again, Defendants' attorney engaged in sanctionable conduct by providing material containing misleading statements from at least one of the three witnesses thus far. The witnesses' statements were not accompanied by sworn affidavit or verification as requested making their statements legally non-binding. Additionally, Defendants' attorneys failed to appropriately respond as the law requires to Plaintiff's First Set of Interrogatories on October 28, 2020 after requesting an extension to do so. (Doc. No. 78).

53. On October 30, 2021, Plaintiff asked Defendants' attorney three questions: (1) Do you intend on providing the sworn verification from Dr. Gavathiotis, Mr. Cancellieri, and Mrs. Gartner

to confirm the origin of those statements? (2) Do you intend to either provide witnesses' contact information or respond to the questions pertaining to witnesses? (3) Do you intend on provid[ing] [witnesses'] name including lab members of Dr. Gavathiotis? Plaintiff also noted that "the pay rate for employees similarly situated are discoverable." ((Doc. No. 78). Defendants' attorneys ignored the email and did not provide any feedback.

54. On November 4, 2020, Plaintiff wrote a letter to the Court regarding Defendants' attorneys continued opposition to disclose basic discoverable information: "Despite filing a motion after making at least two attempts to obtain basic discoverable information along with Defendants' attorney blatantly lying that they are not withholding any discoverable information, Defendants' attorneys continue to intentionally withhold basic discoverable information such as Gavathiotis' lab member names." (paragraph 4 on page 1 of Doc. No. 77).

55. On November 25, 2020, Defendant finally provided the names of Gavathiotis' lab member names. (see Doc. No. 99). Plaintiff stated this fact during the January 20, 2021 motion hearing to Clerk Amodeo. Clerk Amodeo noted she will review the documents filed on NYSCEF and an Order would be issued the following week including directive to comply with Plaintiff's other overdue discovery requests.

56. On November 25, 2020, the Defendants' attorneys finally provide the remaining names of the lab members but still have other requested witnesses' names outstanding: "In response to your request for the names of the members of Dr. Gavathiotis's laboratory in or around the dates of your employment from December 2015 to March 2016, Defendants herein incorporate all of their general objections from Defendants' October 28, 2020 Responses to Plaintiff's Interrogatories. Subject to and without waiving any of the foregoing objections,

Defendants provide the below names of individuals employed in Dr. Gavathiotis's laboratory during the relevant dates. • Evripidis Gavathiotis • Leslie (Goodwin) Jefferson • Onyinyechukwu Uchime • Anna Gartner • Nikolaos Biris • Xiomaris Cotto Rios • Denis Reyna Ruiz • Yang Wu • Thomas Garner • Qisheng Xin • Bogos Agianian" NYSCEF No. 101 ¶ 80.

**J. Plaintiff files MOTION #005 for an Order to Show Cause with a T.R.O. against Defendants (signed on December 22, 2020: Doc. No. 79 and 87):**

57. On December 22, 2020 (filed on December 14, 2020), Plaintiff received (from Ms. Esther Kelly with Lily Marquez and Michele Baez copied to the email) an Order to Show Cause (OSC) with T.R.O. conference hearing scheduled for January 29, 2021 with Judge Armstrong's Chambers regarding retaliatory actions by Defendants. This occurred after Plaintiff sent an email about the OSC filing as well as the motion to compel and to sanction hearing which was scheduled for early December without any notice to Plaintiff; it was rescheduled to March 2021.

58. On January 4, 2021, Plaintiff also obtained via email another copy of the signed Order to Show Cause (OSC) with T.R.O. conference hearing scheduled for January 29, 2021. When Plaintiff attempted to reach out to the person who sent the signed Order to Show Cause (OSC) with T.R.O., Plaintiff received a blocked message. (Doc. No. 97). Unlike the January 20, 2021 motion hearing, there was no link provided for the OSC with T.R.O. hearing.

59. On January 20, 2021, Plaintiff informed Clerk Amodeo during the motion hearing that the parties had an OSC conference hearing scheduled for January 29, 2021 with Judge Armstrong's Chambers. Defendants' attorney, Mrs. Haigh, requested that Clerk Amodeo take

over the OSC and include it in the current hearing. But Clerk Amodeo noted that it was scheduled for a future date so she cannot do so.

60. On January 29, 2021, Plaintiff made multiple futile attempts to get in contact with Judge Armstrong Chambers for the scheduled 9:30 am Order to Show Cause (OSC) with T.R.O. conference hearing. Plaintiff was not provided with any link to join the virtual hearing on January 29, 2021 with Judge Armstrong's Chambers. Plaintiff called motion support repeatedly but that morning no one picked up. Plaintiff left a voicemail on Judge Armstrong's phone. To this day, Plaintiff has not gotten any return call. In fact, Plaintiff never got anyone whenever he was either rerouted by Court staff or called directly to Judge Armstrong's Chambers.

61. On January 29, 2021, Plaintiff sent an email to Mr. Matthew Williams ...... about the OSC hearing in Judge Armstrong's Chamber: "We communicated before. The OSC was scheduled with Judge Armstrong today at 9:30am but there was no information on how to join the conference call. Can you kindly assist me with this? I made multiple attempts to get to the Judge. I also left a voicemail." Mr. Williams was the individual who sent all parties including copying the Judge Rodriquez and Clerk Amodeo an email with virtual link for the motion hearing held on January 20, 2021. Plaintiff has not received a reply email to email sent on January 29, 2021.

K. Motion Hearing (to Compel and to Sanction) via video-conference (January 20, 2021):

62. On December 23, 2020, Plaintiff received via email a January 20, 2021 motion conference hearing (motion to compel and sanction) date with Judge Rodriquez's Chambers along with a videoconference link and all parties including the Judge Rodriquez and the Clerk Amodeo were copied.

63. On January 20, 2021, Plaintiff attended the video-conference motion hearing with Clerk Amodeo and Mrs. Haigh present. Clerk Amodeo noted that she would review the documents filed on NYSCEF and an Order would be issued the following week.

64. On February 4, 2021, Plaintiff emailed Clerk Amodeo with Defendants' attorneys copied conveying the fact that he was recently apprised upon contacting motion support that Judge Rodriquez Chambers has the OSC document. Mrs. Amodeo had provided her email address to both parties at the end of the motion hearing on January 20, 2021. To date, Plaintiff has not received any reply email. There were other experiences of concern of bias and deviations from due process involving not just the Clerk but other Court employees.

L. Plaintiff files Objection to Court's Order dated 1.28.2021 and a Proposed Order (February 16, 2021: Doc. No. 92-95)

65. On February 16, 2021, Plaintiff filed his objection to the Court's January 28, 2021 Order and provided a Proposed Order.

M. Plaintiff files MOTION #006 for Reconsideration, Extension of Time, Recusal, and for Miscellaneous Relief (February 24, 2020: Doc. No.96-101)

66. On February 24, 2021, Plaintiff filed a motion for reconsideration of the January 28, 2021 Court Order, extension of time as it pertains to the Court's Order, and motion for recusal of the discovery judge, Judge Julia Rodriquez.

67. Plaintiff text-boxed 53 (SANC #1 through #53) sanctionable frivolous conduct of Defendants' attorneys in Dkt. 101. The Court ignored "several sanctionable conduct by the Defendants' attorneys.

N. ORDER-MOTION (dated 1.28.2021; filed March 12, 2021: Doc. No.102 (MOTION #003) and Doc. No.103 (MOTION #004))

68. On March 12, 2021, the Court's January 28, 2021 Order was filed. The Court Order denied motion #004 as moot and grant cross-motion for Plaintiff to "respond to Defendants' outstanding discovery demands within 60 days after the date of this Order." The Court granted motion #003 "solely to the extent that" virtual deposition be held for Plaintiff and Dr. Evripidis Garathiotis.

69. The Court made an empty promise to instruct the Defendants to comply with discovery requests enumerated during the motion hearing held on January 20, 2021". See Dkt. 101 p. 34. However, such a directive was absent from the Order.

O. ORDER-OTHER (dated 4.20.2021; filed April 22, 2021: Doc. No. 104)

70. On April 22, 2021, the Court filed an Order scheduling a virtual status conference for June 10, 2021 at 12:00 PM. The Court also noted that the "Plaintiff did not link in and did not appear on 4/15/2021" for a follow up virtual conference hearing.

P. ORDER-OSC (dated 4.23.2021; filed April 27, 2021: Doc. No.105 (MOTION #005))

71. On April 27, 2021, the Court filed an Order denying the "Plaintiff's Order to Show Cause seeking a Temporary Restraining Order, in essence to prohibit Defendants from continued retaliation and to compel discovery".

Q. ORDER-MOTION (dated 4.23.2021; filed April 27, 2021: Doc. No.106 (MOTION #006))

72. On April 27, 2021, the Court filed an Order denying Plaintiff's motion for reconsideration of its January 28, 2021 Order and denying Plaintiff's motion for recusal of the discovery Judge, and adjourned the motion for extension of time to the pending conference set for June 10, 2021 at 12:00 noon.

R. Plaintiff files Emergency OSC with a Stay (MOTION #007) (filed June 7, 2021: Doc. No. 107-111)

73. On June 7, 2021, Plaintiff filed an emergency motion for recusal of Judge Julia Rodriquez, to sanction Defendant's attorneys, and to compel discovery. During the motion conference hearing held virtually on January 20, 2021, the Court promised that the pending Order will include directive for Defendants' attorneys to provide outstanding discoverable information but such a directive was not included in the March 12, 2021 Order. Additionally, the Court remained silent when Defendants' attorney stated that they were not required to provide sworn affidavits per Plaintiff's request in accordance with law. For clarity, it was Clerk Amodeo who presided over the Motion Hearing conference held on January 20, 2021.

S. DISCOVERY CONFERENCE ORDER (dated 6.10.2021; filed June 29, 2021: Doc. No.114)

74. On June 10, 2021, Judge Julia Rodriquez ordered Plaintiff to respond to Defendants' discovery request by July 7, 2021, Plaintiff be deposed on July 16, 2021, and Dr. Gavathiotis be deposed on July 26, 2021.

T. ORDER-OSC (dated 6.10.2021; filed June 29, 2021: Doc. No.115 (MOTION #007))

75. On June 10, 2021, Judge Julia Rodriquez noted that "[t]his action is in the discovery stage; the court's role is to assist in scheduling discovery and addressing issues relevant to the discovery process. Plaintiff's grievance that this court "failed to make a single paragraph, sentence, phrase, or word of caution, criticism, or even comment to Defendants' attorneys" is nonsensical and inappropriate. Plaintiff's further requests that this court recuse itself and/or sanction Defendants is similarly without basis."

U. Defendants file MOTION #008 for Extension of Time for the Deposition of

Dr. Gavathiotis (filed June 29, 2021: Doc. No.112-113)

76. On June 29, 2021, Defendants filed motion for an "[o]rder extending time for Defendants' witness, Dr. Gavathiotis, may be deposed from August 13, 2021 to September 30, 2021 as

well as maintaining the July 7, 2021 deadline for Plaintiff to produce Discovery Responses

and the July 16, 2021 date for Plaintiff's deposition."

V. Plaintiff's Third Request for Discoverable Information (June 29, 2021)

77. On June 29, 2021, Plaintiff demanded Defendants' attorneys to "[p]roduce all documents

containing the salary of employees similarly situated to Plaintiff as Research Technician or

Research Assistant from September 2015 to August 2016. The names and other sensitive

information of the employees should be redacted. In Defendants' Response document,

D000127-D000140, there is a portion of the document noting that "[j]ob rate for new hires

(anyone hired on or after December 17, 2015) will be frozen at September 30, 2015 job rates

during the first year of the agreement. Job rates will thereafter be increased each October 1st

for the remainder of the duration of the agreement." The statements clearly demonstrated that

Plaintiff who was hired on December 7, 2015 was supposed to have his salary "frozen at

September 30, 2015 job rates during the first year of the agreement." There are a number of

factors such as the manner in which the change of contract occurred and the timing of the

change that is relevant to this proceeding. Hence, this information is necessary and material

to the proceeding and in respecting Plaintiff's fourteenth amendment right to due process."

78. On June 29, 2021, Plaintiff demanded Defendants' attorneys to "[p]roduce all job

applications submitted by the Plaintiff. The Defendants provided only one job application

and noted that they would provide additional subsequently. The Plaintiff needs access to this

discoverable information to fully and properly prepare his case."

79. On June 29, 2021, Plaintiff demanded Defendants' attorneys to "[p]roduce all documents of

Research Technicians who preceded and succeeded the Plaintiff's Research Technician job

position in Dr. Gavathiotis' lab. The names and other sensitive information of the employees should be redacted."

80. On June 29, 2021 (modified on July 12, 2021), Plaintiff demanded Defendants' attorneys to "[p]roduce all documents of the experimental work done by the Plaintiff during his time in Dr. Gavathiotis' lab. Experimental data that are privileged should be annotated as such but there should be a full disclosure of the experimental work done by the Plaintiff. [Please note that privilege information does not refer to attorney-client privilege. Privilege information refers to privilege or confidential information related to a research grant or experimental findings stemming from a sponsorship. I realized this clarification might be necessary since you might not be familiar with scientific research. Any information requested by the Plaintiff refers to discoverable information by law and not information specifically protected by attorney-client privilege.]"

W. Plaintiff files Affidavit in Opposition to MOTION #008 (dated July 7, 2021; filed July 8, 2021: Doc. No.116-118)

81. On July 8, 2021, Plaintiff noted that "Defendants' attorneys do not intend on supporting a convenient 1-3 hours deposition of Dr. Gavathiotis any time in July or August."

X. Plaintiff files a Subpoena ad testificandum for witness Dr. Evripidis Gavathiotis (filed July 12, 2021: Doc. No. 119-121)

82. On July 12, 2021, Plaintiff filed a subpoena request to so order for "witness Dr. Evripidis Gavathiotis for a 1-3 [hours [virtual] deposition] on July 26, 2021 at 10 AM or another mutually convenient date and time for the parties between July 19, 2021 and August 13, 2021."

Y. Motion Hearing (to extend time) via video-conference (July 14, 2021) and ORDER-
MOTION (dated 7.26.2021; filed July 28, 2021: Doc. No.122 (MOTION #008))

83. After the virtual conference on July 14, 2021, Judge Julia Rodriquez "[ordered] that Dr.
     Gavathiotis shall be deposed on September 14, 2021 as the day of first choice; alternatively,
     Dr. G shall be deposed on either September 15 or September 30,2021...."

84. On July 14, 2021, The Court noted that Defendant should not file a motion for summary
     judgment during the motion hearing for extension of time for Gavathiotis' deposition.
     However, the Court failed to include such a directive for the Defendants to not file a motion
     for summary judgment and granted their motion to change the deposition date of Gavathiotis
     from July 23, 2021 to September 14, 2021. The Court kept Plaintiff's deposition date for July
     16, 2021. Plaintiff opposed the change of date for a simple 2-hours remote deposition of
     Gavathiotis.

85. The Appellate Court noted that "[t]he request to hold defendants' attorneys in contempt for
     avoiding the deposition of plaintiff's supervisor was properly denied, as the filing of the
     summary judgment motion five days before the scheduled deposition stayed discovery
     automatically (CPLR 3214[b])." Weir v. Montefiore Medical Center et al. Index No. 2021-
     04330, NYSCEF Doc. No. 13. The change of date for the deposition of Dr. Gavathiotis,
     opposed by Plaintiff, was granted with the condition that Defendants' attorney not file a
     motion for summary judgment. Id.

86. The Court also showed bias again when the Court agreed not to include September 30, 2021
     as an option for Gavathiotis's deposition but still included it as an option in the Order.
     Plaintiff reached out to Court to the Court about the error to no avail. (Doc. 128). Plaintiff-

Appellant has recording of these hearings and the Court has a stenographically recorded at least one of these hearings, if not all.

87. The Appellate Court noted that "[w]e decline to consider plaintiff's challenge to a prior decision by which Supreme Court (Julia I. Rodriguez, J.) declined to sign an order to show cause, as improperly raised in his brief on appeal (see CPLR 5704[a])." Weir v. Montefiore Medical Center et al. Index No. 2021-04330, NYSCEF Doc. No. 13. Plaintiff's request for recusal was based on the circumstances of the case and not simply a disagreement with her rulings. Plaintiff's factual basis for his motion to recuse was not solely based on the Judge Julia I. Rodriguez declining to sign an order to show cause.

Z. Defendants' attorneys explicitly refused to produce Discoverable Information (July 20, 2021: Doc. 161):

88. On July 20, 2021, Defendants' attorneys responded to Plaintiff's third/fourth request for discoverable information noting that "Defendants object to this request because (i) by requesting comparator salary data, it improperly seeks the disclosure of information that is neither material, necessary or relevant to the subject matter of this action because Plaintiff's hourly rate was governed by a union negotiated agreement; (ii) it improperly assumes a fact which is not proven; (iii) to the extent it seeks "all" documents, it is overly broad, unduly burdensome. Defendants refuse to produce documents in response to this Request based on their stated objections." NYSCEF No. 161 or 168.

AA. Plaintiff files MOTION #009 for Extension of Time to submit Errata Sheet (filed 9.2.2021 and amended on 9.10.2021: Doc. No. 123-129 and Doc. No. 150-151)

89. On September 2, 2021, Plaintiff filed a motion for extension of time to submit the Errata Sheet.

90. The Appellate Court noted that "[t]he request to strike defendants' summary judgment motion and strike portions of his own deposition transcript was providently denied, as defendants attached plaintiff's subsequently served errata sheet with their reply (Torres, 137 AD3d at 1257), and since "plaintiff failed to provide an adequate reason for the critical, substantive changes [he] sought to make" therein, "which would materially alter [his] deposition testimony" (Jackson, 171 AD3d at 477)." Plaintiff did provide his reasons for wanting to file an errata sheet. On July 22, 2021, Plaintiff emailed Defendants' attorney the reasons for the changes: "When will I receive the transcript (pdf)? There are a few corrections and additional information that needs to be incorporated. Since the deposition was lengthy, it will take some time to review the transcript. There might be other typos or corrections that need to be made. I have other outstanding court documents for other cases. I need a timeline to expect the transcript so that I can make a tentative schedule for reviewing it." NYSCEF No. 127, page 4 of 5. This email was sent over a week prior to Plaintiff receiving the transcript on August 3, 2021. Furthermore, pursuant to CPLR 3116(a), Plaintiff had 60-days to file the errata sheet and not 30-days as deceptively noted on the record by Defendants' attorney. See Weir v. Montefiore Medical Center et al. Index No. 2021-04330, NYSCEF Doc. No. 14, page 58 of 67.

II.  BB. Defendants file MOTION #010 for Summary Judgment using the uncorrected transcript (filed September 9, 2021: Doc. No. 130-149)

91. On September 9, 2021, Defendants filed for Summary Judgment using the uncorrected transcript and sworn affirmation from Dr. Gavathiotis which contains numerous deceitful and pretextual statements.

92. In NYSCEF No. 145, Dr. Gavathiotis outlined several pretextual and false statements about Plaintiff such as "was not competent enough", "did not communicate well with others", "personality didn't fit well. Other members didn't trust his judgment/skills", and "did not aware of any lawsuit". See also NYSCEF No. 159, pages 2-5 of 30 where the Director of Employee Relations, Robert Cancellieri, Esq., noted some of these statements in NYSCEF No. 145. Defendants' attorneys redacted a portion of email communications citing attorney-client communication. However, such email was sent on March 4, 2016 well before the commencement of the litigation. NYSCEF No. 159, pages 2-5 of 30.

CC. Defendants file a Stipulation (filed September 24, 2021: Doc. No. 153)

93. On September 24, 2021, the parties agreed to adjourn the motion for Summary Judgment.

DD. Plaintiff files Cross-Motions (dated 9.30.2021; filed 10.1.2021: Doc. No.154-164)

94. On October 1, 2021, Plaintiff filed cross-motions to strike summary judgment motion in-part and in-full, to hold Defendants' attorneys in contempt of Court Order, to sanction Defendants' attorneys, and to compel discovery. Plaintiff highlighted several disputed and undisputed factual allegations.

EE. Defendants file Reply in Support of Motion for Summary Judgment (filed 10.5.2021: Doc. No.165-168)

95. On October 5, 2021, Defendants' attorneys created a tactical and deceptive theory that various unlawful actions done by Defendants were solely to aid the Government's discriminatory and retaliatory efforts for suing the Government. Defendants' attorneys mischaracterized Plaintiff's reason for additional discovery as needed to prove his claims.

FF. Plaintiff files Reply in Support of Cross-Motions (filed 10.6.2021: Doc. No.169-171)

96. On October 6, 2021, Plaintiff pointed the disconnect between the performance deficiencies argument and their refusal to provide requested discoverable experimental results to support their argument. Plaintiff found email communications containing experimental results and included one email communication as an Exhibit.

GG.MEMORANDUM DECISION/ORDER (dated 11.5.2021; filed 11.17.2021: Doc. No.172 (MOTION #010)

97. On November 5, 2021, Judge Ruben Franco took several phrases or statements from the uncorrected deposition transcript and disputed statements to support his decision to grant Defendants' motion for summary judgment. This was entered on November 17, 2021.

98. There were many disputed issues and facts that can be clarified either with further development of the record via discovery or by a jury as the law requires. Some examples of disputed issues or facts include (1) the specific conditions for new hires in the updated Union agreement was not applicable to Plaintiff given that he was hired on December 7, 2015; (2) Avy Gonzalez gave Plaintiff an ultimatum and provided no explanation for the basis of the contractual amendment being due to an ongoing negotiation with the Union 1199SEIU; (3) the start date for the job was December 21, 2015; (4) Plaintiff applauded for his work and promised to be kept on the job for a couple years by Dr. Gavathiotis; (5) Xiomaris did not supervised or helped Plaintiff carry out the over twenty experiments assigned to Plaintiff by Dr. Gavathiotis; (6) Plaintiff worked independently on experiments given by Dr. Gavathiotis; (7) Plaintiff passed the "probationary passing requirements" noted by Dr. Gavathiotis; (8) Dr. Gavathiotis offered Plaintiff up to 10 hours overtime each week after complimenting his motivation for biomedical research and needed additional experiments completed quickly; (9) Plaintiff conducted over 20 experiments independently and successfully (with only one

"failing"); (10) Dr. Gavathiotis and some lab members became aware of Plaintiff' legal action against the government around January 2016; (11) Ms. Uchime instigated the unprovoked verbal assault incident and acts of aggression incidents; (12) Plaintiff was unlawfully deprived of a stable workstation as part of Ms. Uchime's objective, individually and/or conspiratorially, to get Plaintiff terminated; (13) Plaintiff was maliciously targeted and stalked while he was at work; (14) Defendants' employees who are of Plaintiff's race from distant labs were made to interact him near his termination date; (15) Dr. Gavathiotis told Plaintiff pretextual reasons for wanting to terminate him and also got visibly angry; (16) Dr. Gavathiotis changed Plaintiff's last of work from March 31, 2016 to March 4, 2016 after Plaintiff went to the Human Resource office on March 2, 2016; (17) Plaintiff informed Ms. Gartner that a pending lawsuit against CUNY and the State involving unlawful discrimination and retaliation was influencing his employment and that it would be bad move to illegally terminate him because he would pursue similar lawsuit against the institution; (18) Plaintiff was unlawfully denied a proper investigation of a potentially unlawful termination; (19) Plaintiff was given false reassurance of an investigation of the legality of the termination; (20) Dr. Gavathiotis showed anger and made discriminatory statement in the context of his actions; and (21) bribery played a role in Plaintiff's termination. See Weir v. Montefiore Medical Center et al. Index No. 2021-04330, NYSCEF Doc. No. 14, pages 35-58 of 67.

99. Judge Franco did not use a mix-motive evidentiary route or framework for determining the viability of Appellant's NYCHRL and NYSHRL claims. Plaintiff did not abandon his claims as Defendants' attorney argued in their summary judgement. Plaintiff had repeatedly noted on the record that the motives for the unlawful actions are mixed.

HH. Plaintiff files Notice of Appeal (filed 11.18.2021: Doc. No.173)

100.    On November 18, 2021, Plaintiff filed Notice of Appeal.


III.    PRE- AND POST-DISCOVERY HALLMARKS


101.    On February 14, 2020, Plaintiff moved for Default Judgment coupled to Discovery and

Trial. See Weir v. Montefiore Medical Center et al. Index No. 42000/2020E, NYSCEF Doc.

No. 19-21. In his moving papers, Plaintiff noted that "[a]fter almost one year (April 2019) of

commencing the case in the Supreme Court of the State of New York and four years

(December 2016) since it was originally commenced in the Southern District Court of New

York, the defendants have yet to answer the current Complaint within the 30-days answer

timeline… This case would have been reopened in US District Court had the defendant's

attorney not intentionally ignored the plain language of local rule 6.3 in US District Court in

the Southern District of New York (SDNY) to maliciously label my request for

reconsideration as "indisputably untimely." (see document number 49 and 51 of case number

16-cv-09846-KPF in SDNY)… It is one thing for a novice or pro se litigant to intentionally

or unintentionally ignore the plain language of a court rule, but it's another thing when a

member of the bar maliciously does so to obstruct justice." Id. NYSCEF Doc. No. 20 (sworn

Affidavit).

102.    On February 19, 2020, Defendants cross-moved in opposition of Default Judgment and in

support motion for extension of time to plead. In their moving papers, Mrs. Jean Schmidt

knowingly and deceptively stated that "[a]lmost immediately after Plaintiff joined the

research team, it became clear to lab members, including Dr. Gavathiotis, that Plaintiff would

not be effective in the position. Plaintiff struggled in his interactions with lab members, who reported to Dr. Gavathotis that Plaintiff's work could not be trusted. This was untenable for any research technician expected to work independently. As a result, the decision was made to terminate Plaintiff's employment." See Weir v. Montefiore Medical Center et al. Index No. 42000/2020E, NYSCEF Doc. No. 23, page 3 of 10.

103.    Mrs. Schmidt subsequently and implicitly contradicted her earlier statement regarding legality of the termination and claims by stating that their motion to dismiss the federal lawsuit was "based upon Plaintiff's failure to articulate any claims upon which relief could be granted." See Id. NYSCEF Doc. No. 23, page 5 of 10.

104.    Mrs. Schmidt subsequently noted that "[t]here is absolutely no basis for Plaintiff's claims." See Id. NYSCEF Doc. No. 23, page 7 of 10.

105.    Mrs. Schmidt affirmed that "[t]he EEOC determined on its own, without the submission of a position statement, that there was no violation, and issued a Notice of Right to Sue letter on September 20, 2016. *Id.*" See Id. NYSCEF Doc. No. 24. This is a deceitful affirmation because the box checked on the Notice of Right to Sue letter noted that "The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." See Weir v. Montefiore Medical Center et al. No. 1:16-CV-09846-KPF, ECF No. 2, page 5 of 10.

106.    Mrs. Schmidt affirmed that "[o]n December 13, 2019, Jennifer Taiwo, the associate handling the matter with me who was tasked with reviewing the docket and calendaring

deadlines left the law firm." See Weir v. Montefiore Medical Center et al. Index No.

42000/2020E, NYSCEF Doc. No. 24.

107.    On May 7, 2020, Defendants finally filed their Answer to the Amended Complaint which

consisted of a broad denial of the allegations. See Id. NYSCEF Doc. No. 50.

108.    On May 15, 2020 (Order dated March 30, 2020), Judge Franco denied Plaintiff's default

judgment motion and granted Defendants' motion request for an extension of time to plead.

See Id. NYSCEF Doc. No. 52.

109.    On June 16, 2020 (Order dated June 10, 2020), Judge Franco granted Yeshiva

University's motion to dismiss it from the case and allowed the remaining Defendants and

claims to move into discovery. See Id. NYSCEF Doc. No. 60.

110.    After Plaintiff filed his Notice of Appeal to the First Department, Mrs. Haigh reached out

to Plaintiff noting that he had "won" and requested that he contact her back with a settlement

amount. Plaintiff subsequently declined to provide a settlement amount and proposed

agreement in-part until the case returned back to trial court and based on disrespectful

approach made by Mrs. Haigh. Initially, Mrs. Haigh noted that Defendants were willing to

bear the cost ($512.50) of the Bill of Costs they filed as a form of settlement of the judgment

made in their favor. See Id. NYSCEF Doc. No. 176 and see also Weir v. Montefiore Medical

Center et al. Index No. 2021-04330, NYSCEF Doc. No. 6 ¶ 114, 118, and 119.

111.    In Appellees' Brief submitted in the First Department, Mrs. Schmidt declined to

challenge Plaintiff's appeal relief for the aiding-and-abetting claims (Aiding-and-Abetting

under NYCHRL and Aiding-and-Abetting under NYSHRL) and noted in-part that "at that

point in discovery it was clear to Defendants and the trial court that Plaintiff's claim was that

Defendants assisted Government Agents in conspiring against him." See Index No. 2021-04330, NYSCEF Doc. No. 10, page 38.

I.    LIST OF CAUSES OF ACTION IN THIS CASE

112.   Plaintiff has attached a copy of the Amended Complaint in Weir v. Montefiore Medical Center et al. Index No. 42000/2020E to this Complaint (**Exhibit A**). The other documents referenced herein are available on Pacer (federal cases) or NYSCEF (state cases).

113.   Plaintiff is Black (race), Jamaican accent (ethnicity), dark-brown in complexion (color), and born in Jamaica (national origin).

114.   All Defendants have directly and/or indirectly conspired with the Government in their engagement of unlawful conducts against Plaintiff as described and/or referenced herein. Plaintiff is invoking the doctrine of respondeat superior and vicarious liability in this action. Defendants Montefiore Medical Center and Albert Einstein College of Medicine were represented by Littler Mendelson by way of Jean L. Schmidt and Emily C. Haigh. Hence, Littler Mendelson is liable for the unlawful conducts of Jean L. Schmidt and Emily C. Haigh.

115.   "Individual Defendants" refers to the following Defendants in their personal, professional, and governmental capacities only: Evripidis Gavathiotis, Anna Gartner, Jean L. Schmidt, and Emily C. Haigh. Individual Defendants are being sued in all their capacities.

116.   "All Defendants" refers to each and every identified name in all their capacities (personal, professional, and/or governmental) under each count. There are nine counts (IX) total in this Complaint.

117.    There are other claims to subsequently assess for this action such as Negligence and its derivatives (e.g. Negligent Infliction of Emotional Distress (NIED), Negligent Entrustment, Negligent training/supervision, Negligent retention, and Negligent hiring); Intentional Infliction of Emotional Distress (IIED); Conspiracy under § Article I, § 6 of NY Constitution; Concert of Action; Conspiracy to Support Third-party Fraud; 13th Amendment Rights and Rights under Article I, § 6 of NY Constitution; Substantive Due Process under the 5th and 14th Amendments, and Article I, § 6 of NY Constitution; Conspiracy Claim under section 1985(2); Forward-looking Right of Access Claim under the 1st, 5th, and 14th Amendments and the Privileges and Immunities Clause of Article IV; Title VI, Intentional Interference with Contractual Relationship (IICR); Contract Performance Interfered with by Outsider; Malicious Interference with Contract Rights; Fraudulent and Negligent Misrepresentation; Breach of Contract; Employer Retaliation Against Employee; Unjust Enrichment; and Defamation.

118.    Some of these claims are dependent on the Court tolling the statute of limitations of certain unlawful conducts. Some of these unlawful actions are subjected to the continuity doctrine and the doctrine of equitable estoppel. Henceforth, these other claims can be assessed later in due course.

119.    Defendants Montefiore Medical Center and Albert Einstein College of Medicine engaged in unlawful conducts against Plaintiff as described and referenced in preceding paragraphs herein and/or the Amended Complaint (Exhibit A).

120.    Defendant Evripidis Gavathiotis, PhD, engaged in unlawful conducts against Plaintiff as described and referenced in preceding paragraphs herein and/or the Amended Complaint (Exhibit A).

121.    Defendant Anna Gartner engaged in unlawful conducts against Plaintiff as described and referenced in preceding paragraphs herein and/or the Amended Complaint (Exhibit A).

122.    Defendants Littler Mendelson, Jean L. Schmidt, Esq., and Emily C. Haigh, Esq., engaged in unlawful conducts against Plaintiff as described or referenced in preceding paragraphs herein.

123.    Jury Trial is demanded.

| LIST OF CAUSES OF ACTION IN THIS CASE | | |
|---|---|---|
| COUNT | CAUSE OF ACTION | DEFENDANT |
| I | Backward-looking Right of Access Claim under the 1st, 5th, and 14th Amendments and the Privileges and Immunities Clause of Article IV | All Defendants |
| II | Procedural Due Process under the 5th and 14th Amendments, and Article I, § 6 of NY Constitution | All Defendants |
| III | Equal Protection under the 14th Amendment, and Article I, § 6 of NY Constitution | All Defendants |
| IV | Conspiracy Claim under section 1985(3) | All Defendants |
| V | Seventh Amendment Rights and Rights under Article I, § 2 of NY Constitution | All Defendants |
| VI | Judiciary Law § 487 | All Defendants |
| VII | Legal Fraud | All Defendants |
| VIII | Aiding and Abetting Fraud | All Defendants |
| IX | Aiding and Abetting the Commission of Tort | All Defendants |

## COUNT I

**Backward-looking Right of Access Claim under the 1st, 5th, and 14th Amendments and the**

**Privileges and Immunities Clause of Article IV**

**Plaintiff v. All Defendants**

124.   Plaintiff incorporates by reference each allegation contained in the preceding paragraphs

as if the same were set forth more fully at length herein.

A. NYCHRL and NYSHRL Retaliation Claims

125.   Plaintiff pleaded viable NYCHRL and NYSHRL Retaliation Claims in Weir v.

Montefiore Medical Center et al. Index No. 42000/2020E. Plaintiff noted that he engaged in

protected activities which resulted in adverse actions such

a)   "Participating in state litigation against the City University of New York (CUNY) and

the State of New York involving unlawful discrimination and retaliation: "On December

18, 2015, the plaintiff filed a Notice of Intention to file a claim to the Court of Claims,

The Attorney General of New York office, and CUNY. The Notice of Intention to file a

Claim can act as a Claim in New York Court of Claim in certain situation[s] so it can be

viewed as the actual Claim." (NYSCEF No. 2 ¶ 4). Plaintiff's employment contract was

abruptly changed days after he began working officially. He was given an ultimatum to

take it or leave it. See Exhibit A, NYSCEF No. 137, 134, and 133 (pages 14-16 of 137

or Pl. Dep. 46:11-57:21)." Weir v. Montefiore Medical Center et al. Index No. 2021-

04330, NYSCEF Doc. No. 14.

b)   "Participating in state litigation against the City University of New York (CUNY) and

the State of New York involving unlawful discrimination and retaliation: Ms. Uchime

boisterously and baselessly scold and criticized Plaintiff's experimental results without knowing the kind of experiments Plaintiff was doing nor the results themselves. See for eg. NYSCEF No. 2 ¶ 14." Id.

c) "Opposing disparate treatment, unlawful disadvantaged, conspiratorial, retaliatory, and hostile work environment: After Plaintiff met with Ms. Gartner regarding his experience in Dr. Gavathiotis's lab, Dr. Gavathiotis made up a number of pretextual reasons including changing the job description to terminate Plaintiff such as stating that he is looking for someone who [has] experience working with mice. See for eg. NYSCEF No. 2 ¶ 21. Dr. Gavathiotis clearly noted that the job position did not require experience working with mice. (see Exhibit B). "Dr. Gavathiotis shrewdly and passive-aggressively (visibly restrained anger) told me that I "didn't fit in" after running out of fabricated excuses." See for eg. NYSCEF No. 2 ¶ 42." Id.

d) "Opposing disparate treatment, unlawful disadvantaged, conspiratorial, retaliatory, and hostile work environment: "On the morning of March 3rd, the plaintiff went to Ms. Anne Gartner again and provided more details of his court case. She asked him to stop telling her about his court case instead of being concerned that he was being maliciously targeted and thus possibly being unfairly terminated." See for eg. NYSCEF No. 2 ¶ 22." Id.

126.   Plaintiff noted that "Defendants, Dr. Gavathiotis, and some members of Dr. Gavathiotis' lab became aware of Plaintiff's lawsuit against CUNY. Pl. Dep. 261:12-20 and 160:19-25." Id.

127.   Plaintiff noted that "temporal proximity and/or a pattern of antagonism are a plausibly indicator of causal links." Id.

B. NYCHRL and NYSHRL Equal Pay Claim

128.    Plaintiff pleaded viable NYCHRL and NYSHRL Equal Pay Claims in Weir v.

Montefiore Medical Center et al. Index No. 42000/2020E. Plaintiff noted that he is "Black

(race), Jamaican accent (ethnicity), dark-brown in complexion (color), and born in Jamaica

(national origin). See for eg. NYSCEF No. 2 ¶ 7 and Pl. Dep. 252:21-253:5." Id.

129.    Plaintiff noted that he was qualified for the position. "The prime requirement to pass the

probationary period according to Dr. Gavathiotis was for Plaintiff to prove himself by

obtaining similar experimental results to what he obtained. Dr. Gavathiotis confirmed that

Plaintiff obtained similar results days after Plaintiff commenced working in the lab.

Subsequently, Dr. Gavathiotis gave Plaintiff over twenty different experiments to

independently carry out. Denis (the former research technician of the lab) also confirmed that

Plaintiff's results were similar when he noted that Dr. Gavathiotis apprised him of Plaintiff's

results during the unprovoked verbal assault from Ms. Uchime. See for eg. NYSCEF No. 2 ¶

¶ 13 and14; and Pl. Dep. 77:22-80:13. Additionally, the job description outlined a number of

requirements. See Exhibit B." Id.

130.    Plaintiff noted that he was paid less for the same work. "Plaintiff's pay rate was abruptly

reduced days after he began working in the lab. He was given an ultimatum to take or leave

it. See for eg. NYSCEF No. 2 ¶ ¶ 9 and 35; and Exhibits A and B… Plaintiff was

compensated for less work hours and at [a ]lesser pay rate for some hours. See for eg.

NYSCEF No. 2 ¶ 12." Id.

131.    The lesser pay occurred under circumstances that give rise to an inference of

discrimination because "the new union agreement changes for new hires on or after

December 17, 2015 did not apply to Appellant because he was hired on December 7,

2015…Plaintiff noted that Ms. Jefferson did not provide an explanation upon request by Plaintiff for the less work hours and at lesser pay rate for some hours. NYSCEF No. 2 ¶ 12. Also, Ms. Jefferson was dismissive with disgust of Plaintiff when he went in-person to inquire about the pay discrepancies. Pl. Dep. 251:6-15…Throughout the records, notably the Amended Complaint and Transcript (NYSCEF No. 2 and 133 respectively), Plaintiff noted that the unequal pay is also pertaining to disparate pay of an employee outside his protected classes." Id.

132.    In contrast to the Appellate Court's opinion, "Plaintiff did not testify that unequal pay was due only to retaliation or aiding and abetting but rather that it was due to disparate treatment or better fit under other claims. See for eg. Pl. Dep. 243. As noted earlier herein, the unlawful actions including the unequal pay were due to multiple motivating factors. Hence, under mixed-motive analysis, these claims are viable." Id.

C. NYCHRL and NYSHRL Discrimination Claims

133.    Plaintiff pleaded viable NYCHRL and NYSHRL Discrimination Claims in Weir v. Montefiore Medical Center et al. Index No. 42000/2020E.

134.    Plaintiff noted that he was a member of protected classes and qualified for the position as explained earlier herein.

135.    Plaintiff noted that he was subjected to several discrete and/or continuous adverse actions such as:

    A.  "Breach of contract/Unlawful change of contract: Plaintiff's pay rate was abruptly reduced days after he began working in the lab. He was given an ultimatum to take or leave it. See for eg. NYSCEF No. 2 ¶ ¶ 9 and 35." Id.

B. "Unlawful disadvantaged, conspiratorial, retaliatory, and hostile work environment changed the terms, conditions, and privileges of employment contract: Ms. Uchime boisterously and baselessly scold and criticized Plaintiff's experimental results without knowing the kind of experiments Plaintiff was doing nor the results themselves. See for eg. NYSCEF No. 2 ¶ 14." Id.

C. "Breach of contract/denial of training: Plaintiff's employment was contingent upon successful completion of his 90 days probationary period. However, he was abruptly terminated prior [to ]the end of this period. See for eg. NYSCEF No. 2  24. As noted previously, Plaintiff has already passed the probationary period as confirmed by Dr. Gavathiotis and he has been working independently essentially days after officially working. Assuming, arguendo, that Plaintiff was not working independently or needed further training, the contractual agreement allowed for 90 days of training to prove suitability for the job position. Prior to Plaintiff [] going to the Human Resource office for intervention, Dr. Gavathiotis noted that he was going to keep Plaintiff on the job until March 31, 2016." Id.

D. "Unlawful failure to Intervene/unlawful disadvantaged, conspiratorial and retaliatory change in the terms, conditions, and privileges of employment: After Ms. Gartner directed Dr. Gavathiotis to escort Plaintiff out of the building, Ms. Anne Gartner noted that she has not investigated the matter as yet and she will be doing so soon. On the contrary, she knew about everything that was going on and partook in it. See for eg. NYSCEF No. 2 ¶ 23." Id.

136.   "Throughout the records, notably the Amended Complaint and Transcript (NYSCEF No. 2 and 133 respectively), Plaintiff expressed that the inference of unlawful discrimination

arose from the selective or disparate treatment of Plaintiff relative to other employees similarly- situated and outside of Plaintiff's protected classes (race, ethnicity, color, and national origin). One of Dr. Gavathiotis' lab member was a MD/PhD student/employee who was Black and born in Nigeria. The other lab members were Asians (two), Caucasians (three), and light skinned Hispanics (two). NYSCEF No. 2 ¶ 8." Id.

137.    "While Dr. Gavathiotis knew Plaintiff's race and color when he hired him, he did not know Plaintiff's national origin nor his ethnicity. Plaintiff was explicitly asked by lab members including Dr. Gavathiotis which country he was from while he was working in the lab. There was no specific reason for the question stated for the inquiry. NYSCEF No. 2 ¶ 15. Therefore, [the] same actor inference fails for Plaintiff's national origin and ethnicity." Id.

138.    Interference Claim under NYCHRL is implicit and can be derived in Weir v. Montefiore Medical Center et al. Index No. 42000/2020E.

D. NYCHRL and NYSHRL Hostile Work Environment Claims

139.    Plaintiff pleaded viable NYCHRL and NYSHRL Hostile Work Environment Claims in Weir v. Montefiore Medical Center et al. Index No. 42000/2020E. Plaintiff noted that he was a member of protected classes as explained earlier herein.

140.    Plaintiff noted several examples where he suffered unwelcome[] harassment.

    A. "One example of unwelcome[] harassment occurred when Plaintiff was subjected to routine stalking and monitoring at work by both outsiders and employees of the Defendants. See for eg. NYSCEF No. 2 ¶ ¶ 10 and 37. (supported in-part by Feingold v. New York.)…A second example of unwelcome[] harassment occurred when Ms. Uchime boisterously and baselessly scold[ed] and criticized Plaintiff's experimental results without knowing the kind of experiments Plaintiff was doing nor the results

themselves. See for eg. NYSCEF No. 2 ¶ 14. (supported in-part by Terry v. Ashcroft, Harding v. Dorilton Cap. Advisors LLC, and Feingold v. New York.)…A third example of unwelcome[] harassment occurred when Xiomaris fabricated complaints about Plaintiff not working independently to Dr. Gavathiotis. Plaintiff conducted experiments distinct from what Xiomaris did and notably sought her help on three prominent occasions. See for eg. NYSCEF No. 2 ¶ 16. (supported in-part by Terry v. Ashcroft, Harding v. Dorilton Cap. Advisors LLC, and Feingold v. New York.)…A fourth example of unwelcome[] harassment occurred when Dr. Gavathiotis and a couple of the lab members whom the plaintiff interacted with suddenly began to treat him differently. See for eg. NYSCEF No. 2 ¶ 18. (supported in-part by Terry v. Ashcroft, Harding v. Dorilton Cap. Advisors LLC, and Feingold v. New York.)" Id.

141.    "Throughout the records, notably the Amended Complaint and Transcript (NYSCEF No. 2 and 133 respectively), Plaintiff expressed that the inference of unlawful discrimination arose from the selective or disparate treatment of Plaintiff relative to other employees similarly- situated and outside of Plaintiff's protected classes (race, ethnicity, color, and national origin). One of Dr. Gavathiotis' lab member was a MD/PhD student/employee who was Black and born in Nigeria. The other lab members were Asians (two), Caucasians (three), and light skinned Hispanics (two). NYSCEF No. 2 ¶ 8." Id.

142.    "Throughout the records, notably the Amended Complaint and Transcript (NYSCEF No. 2 and 133 respectively), Plaintiff noted that harassment involved numerous employees outside of Plaintiff's protected classes as well as facilitated outsiders, occurred each time Plaintiff exited the lab, and also occurred within the lab from around January 2016 until he was escorted out the building on March 3, 2016." Id.

E. Aiding-and-Abetting Claims under NYCHRL and NYSHRL

143.   Plaintiff pleaded viable Aiding-and-Abetting Claims under NYCHRL and NYSHRL in
Weir v. Montefiore Medical Center et al. Index No. 42000/2020E. Plaintiff noted several
examples where employees of Defendants engaged in unlawful compelling, coercing,
inciting, aiding, or abetting. "One example occurred after Plaintiff met with Ms. Gartner
regarding his experience in Dr. Gavathiotis's lab, Dr. Gavathiotis called Plaintiff into his
office and changed his last day of work from March 31, 2016 to March 4, 2016. See for eg.
NYSCEF No. 2 ¶ 21….Another example occurred when Ms. Uchime boisterously and
baselessly scold[ed] and criticized Plaintiff's experimental results without knowing the kind
of experiments Plaintiff was doing nor the results themselves. See for eg. NYSCEF No. 2 ¶
14." Id.

144.   Plaintiff was denied his right of access to Court to be impartially and lawfully heard.

145.   WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of
this Complaint, infra.


## COUNT II

### Procedural Due Process under the 5th and

### 14th Amendments, and Article I, § 6 of NY Constitution

### Plaintiff v. All Defendants


146.   Plaintiff incorporates by reference each allegation contained in the preceding paragraphs
as if the same were set forth more fully at length herein.

147.    Defendants collectively conspired to deprive Plaintiff of his due process rights as described and referenced herein.

148.    WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, infra.


## COUNT III

### Equal Protection under the 14th Amendment, and

### Article I, § 6 of NY Constitution

### Plaintiff v. All Defendants


149.    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

150.    Plaintiff is a member of several protected classes as described herein. Defendants collectively conspired to deny Plaintiff equal protection of the law and this was motivated by bias against Plaintiff's protected classes as described and referenced herein.

151.    WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, infra.


## COUNT IV

### Conspiracy Claim under section 1985(3)

### Plaintiff v. All Defendants

152.    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

153.    Plaintiff is a member of several protected classes as described herein. Defendants collectively conspired to deny Plaintiff equal protection of the law and in furtherance of conspiracies against Plaintiff as described and referenced herein. This was motivated by bias against Plaintiff's protected classes as described and referenced herein. Plaintiff suffered legal harms as described and referenced herein.

154.    WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, infra.

### COUNT V

**Seventh Amendment Rights and**

**Rights under Article I, § 2 of NY Constitution**

**Plaintiff v. All Defendants**

155.    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

156.    Plaintiff seeks damages and the case is legal in nature. Henceforth, Plaintiff had and has right to a jury trial.

157.    WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, infra.

### COUNT VI

**Judiciary Law § 487**

**Plaintiff v. Defendants Littler Mendelson, Jean L. Schmidt, and Emily C. Haigh**

158.    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

159.    Defendants repeatedly responded late to Plaintiff's discovery demands, repeatedly made false statements, and repeatedly failed to reasonably respond to Plaintiff's discovery demands as described and referenced herein.

160.    Defendants conspired among each other, other Defendants, and with the Government to deceive the Court and Plaintiff as described and referenced herein.

161.    WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, infra.

### COUNT VII

**Legal Fraud**

**Plaintiff v. All Defendants**

162.    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

163.    Defendants repeatedly made false statements including deceptive sworn statements as described and referenced herein. For example, Defendants Evripidis Gavathiotis and Anna Gartner both submitted sworn affirmations containing deceitful and perjurious statements. Also, Defendant Jean L. Schmidt submitted deceitful and perjurious sworn statements to the Court.

164.    Defendants conspired among each other, other Defendants, and with the Government to deceive the Court as described and referenced herein.

165.    WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, infra.

## COUNT VIII

### Aiding and Abetting Fraud

### Plaintiff v. All Defendants

166.    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs

as if the same were set forth more fully at length herein.

167.    Defendants aided-and-abetted fraud as described and referenced herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, infra.

## COUNT IX

### Aiding and Abetting the Commission of Tort

### Plaintiff v. All Defendants

168.    Plaintiff incorporates by reference each allegation contained in the preceding paragraphs

as if the same were set forth more fully at length herein.

169.    Defendants aided-and-abetted the commission of tort against Plaintiff as described and

referenced herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, infra.

PRAYER FOR RELIEF

## A.  DAMAGES AND OTHER RELIEFS

170.    Since his employment was terminated and more broadly the onset of unlawful actions in

December 2015, Plaintiff has suffered lost wages, lost employment opportunities, loss of

medical benefits and other fringe benefits. In addition, Plaintiff has suffered and will

continue to suffer severe emotional and physical distress. WHEREFORE, Plaintiff requests

that the Court grant him the following relief against all Defendants in all capacities:

A.  Pain and suffering for the pain and impairments Plaintiff have been experiencing as well

as various emotional distress Plaintiff have been experiencing since the December 2015;

B.  Loss of past and future wages or earning capacity;

C.  Loss of enjoyment in life;

D.  Damages for past and future monetary and non-monetary losses as a result of

Defendants' unlawful actions giving rises and viability to the cause of actions herein;

E.  Award compensatory damages to compensate Plaintiff for future pecuniary losses,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life,

emotional distress, anguish and humiliation, loss of his self-esteem and ability to provide

himself with the rewards of his chosen career;

F.  Punitive damages;

G.  Liquidated damages;

H.  An award of recoverable costs that Plaintiff has incurred in this action, including, but not

limited to, expert witness fees, as well as Plaintiff's reasonable litigation fees and

expenses and costs to the fullest extent permitted by law;

I.  Pre- and post-judgment interest and all amount due;

J.  An allowance to compensate for negative tax consequences;

K.  A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of State of New York as well as federal laws;

L.  A permanent restraining or injunction enjoining Defendants, their directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment, federally-funded, and state-funded practices which violates invoked laws such as Section 1985(3), Judiciary Law § 487, Aiding-and-Abetting Fraud, and Procedural Due Process under the 5th and 14th Amendments, and Article I, § 6 of NY Constitution;

M.  Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pretextual reasons cited for his adverse actions, disciplines, and termination;

N.  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure;

O.  Grant to Plaintiff such additional relief as this Court deems just and proper.


Dated: May 24, 2023

By: _____/S/_____

Nicholas Weir, Pro Se
1936 Hempstead Turnpike, #217
East Meadows, NY 11554
wnick102014@gmail.com

## VERIFICATION

_Nicholas Weir_ , being duly sworn, deposes and says:

I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and behalf and as to those matters I believe them to be true.

Date: _05/24/2023_

_N. Weir_
(Signature)

Sworn to before me this _04th_ day
of _May_ , 2023

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Thomas Weifenbaugh, Notary Public
Allegheny County
My commission expires March 15, 2024
Commission number 1296744
Member, Pennsylvania Association of Notaries